UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LLOYD GEORGE KENNEY,<br><br>    Plaintiff,<br><br>    v.<br><br>J. CARP, et al.,<br><br>    Defendants. | Case No. 2:19-cv-05759-AB-KES<br><br>ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |

## I.

## INTRODUCTION

Lloyd George Kenney ("Plaintiff"), a prisoner in the custody of the federal Bureau of Prisons ("BOP"), filed a pro se civil rights Complaint alleging violations of his constitutional rights by 12 Defendants: 5 work at Federal Correctional Institution ("FCI") Victorville II in California, 5 work at FCI Phoenix in Arizona, and 2 are BOP Administrators.[1] (Dkt. 1 at 3-6.) Plaintiff sues each Defendant in

---

[1] The "BOP Administrator" defendants are J. Baltazar, the BOP's Western Regional Director in Stockton, California, and Ken Hyle, the BOP's General Counsel in Washington, D.C. (Dkt. 1 at 4, 6.)

1

his official and individual capacities. (Id.) For the reasons discussed below, the Complaint is dismissed with leave to amend.

## II.

## SUMMARY OF ALLEGATIONS

After suffering convictions for armed bank robbery and related crimes, Plaintiff was sentenced to federal prison in 2016. (Dkt. 1 at 47.)

### A. Events at FCI Victorville II.

In 2017, Plaintiff moved cells per an order by Defendant Carp but filed a grievance alleging that the order was racially motivated. (Id. at 73, 76.)

In May 2018, Plaintiff had another dispute with Defendant Carp over an order to move cells. (Id. at 24, 40, 43, 46, 48.) During a face-to-face encounter, Defendant Carp accused Plaintiff of "displaying signs of imminent violence," so he ordered Plaintiff confined to the Special Housing Unit ("SHU") and filed an incident report. (Id. at 51.) Plaintiff denies that he displayed signs of violence. (Id. at 9, 58-59, 65.) On June 18, 2018, a hearing officer found that Plaintiff did not engage in prohibited conduct, expunging the incident report . (Id. at 55.) After this expungement, Defendant Carp "retaliated by manufacturing more allegations that resulted in Plaintiff's continued administrative segregation." (Id. at 9.)

In the SHU, Plaintiff was "double-celled with [a] mentally disturbed black inmate who physically assaulted Plaintiff." (Id. at 7.) This inmate had a "history of erratic and violent institutional behavior." (Id. at 8.) Plaintiff suffered "pain, cuts, scratches and bruises" from the assault, and he "was examined by a nurse and a cut bandaged." (Id.)

Plaintiff was later double-celled with two other black inmates and "witnessed other inmates segregated on racial/ethnic lines." (Id. at 7.) He contends that the BOP "promote[s] [a] common practice of racial and ethnic segregation in [its] cells." (Id.) He alleges that he lost "personal property and legal material" as a result of his SHU placement and eventual transfer to FCI Phoenix, discussed below.

(Id. at 9.)

On June 27, 2018, Defendant Colizzi completed an SIS investigation which concluded that Plaintiff's "aggressive and disruptive behavior interferes with the security or orderly running of the institution." (Id. at 44.) Plaintiff alleges that Defendant Colizzi ignored the expungement and "rubber-stamped Carp's false allegations," resulting in a false report of misconduct staying in Plaintiff's prison records. (Id. at 9, 63.)

On July 24, 2018, Defendants Espadas-Adams, Agostini, and Carr all signed a "Request for Transfer/Application of Management Variable" form. (Id. at 44, 57.) The form notes, "[Plaintiff's] institutional adjustment is considered poor. He has been housed in the Special Housing Unit since May 15, 2018, pending an SIS investigation and is presently unassigned to a work detail." (Id.) The form also notes, "[Plaintiff] has a history of allegations without any foundation for the sole purpose to maintain a single cell." (Id.) The form recommends transfer based on Defendant Colizzi's SIS investigation, noting, "Due to the nature of the investigation, it is imperative that [Plaintiff] be transferred to a facility outside of ... Victorville, for staff security pertaining to the investigation." (Id.)

Plaintiff alleges that Defendants Espadas-Adams, Agostini, and Carr relied on information they knew to be false (i.e., Defendant Carp's incident report) to request his transfer and a higher security variable, although a higher security variable was never assigned. (Id. at 9, 22.) He claims that Defendants took these actions to retaliate against him for filing grievances against Defendant Carp. (Id. at 9.)

Plaintiff remained in the SHU at FCI Victorville II until August 7, 2018, when he was transferred to FCI Phoenix. (Id. at 42.)

**B.     Events at FCI Phoenix.**

At FCI Phoenix, Plaintiff filed grievances seeking to have various records and/or negative information removed from his BOP file. (Id. at 16-17, 22-23, 42,

60.) Plaintiff's requests concerned both records written by staff at FCI Victorville II and an incident on March 9, 1995, during an earlier term of incarceration that the BOP characterized as "making sexual proposal/threat." (Id. at 11, 12, 50.) In November 2018, he received a response from Defendant Lothrop, the warden of FCI Phoenix, explaining why no records would be removed from his BOP file. (Id. at 31.) In February 2019, he received a similar response from Defendant Baltazar, the Regional Director of the Western Office of the BOP. (Id. at 22.)

Plaintiff also alleges that following the transfer, Defendant Jimenez, a correctional counselor, retaliated against him by changing Plaintiff's Inmate Financial Responsibility Program ("IFRP") from quarterly $25 payments to monthly $25 payments; this change caused Plaintiff's account to default which led to discipline in the form of ineligibility for a prison job. (Id. at 10.) Plaintiff complains that other staff members at FCI Phoenix and the BOP Administrators knew about his situation but failed to remedy it. (Id. at 10, 39.)

**C.  Legal Claims and Relief Sought.**

Based on these factual allegations, Plaintiff alleges that the Defendants at FCI Victorville II and the BOP Administrators violated his (1) Fifth Amendment[2] due process rights by housing him only with other black inmates, condoning a practice of racial segregation, (2) Eighth Amendment rights by failing to protect him from the SHU cellmate who assaulted him, and (3) First Amendment rights by retaliating against him for filing grievances by (a) putting false information in his BOP file and refusing to remove it, and (b) requesting his transfer with a higher security variable (collectively, the "FCI Victorville Claims"). (Id. at 7-9.)

---

[2] Although Plaintiff characterizes this as a Fourteenth Amendment Equal Protection claim (Dkt. 1 at 7), the Court liberally construes this claim as brought under the Fifth Amendment, since Defendants are alleged to be acting under color of federal law. See United States v. Windsor, 570 U.S. 744, 774 (2013); Bolling v. Sharpe, 347 U.S. 497, 498-500 (1954).

4

Plaintiff alleges that the Defendants at FCI Phoenix and the BOP Administrators violated his (1) Fifth Amendment due process rights by changing his IFRP "arbitrarily and capriciously," and (2) First Amendment rights by retaliating against him for filing grievances by (a) refusing to remove false information in his BOP file, (b) refusing to process his grievances or rejecting them for "specious" reasons, and (c) arbitrarily changing his IFRP (collectively, the "FCI Phoenix Claims"). (Id. at 10, 21, 32-35, 45, 54, 68.)

Plaintiff seeks: (1) unspecified declaratory relief, (2) injunctive relief (as detailed below), (3) compensatory damages of $500,000, and (4) punitive damages of $500,000. (Id. at 11.) As injunctive relief, Plaintiff seeks: (1) expungement of "false and prejudicial information" from several listed documents in his BOP file, (2) judicial examination of his BOP file to find and redact information that "distorts or prejudices Plaintiff's institutional behavior," and (3) assignment at FCI Phoenix "to UNICOR employment with back-pay commensurate to placement on waiting list beginning August 9, 2018, and hire-date consistent with inmates who were hired in chronological order." (Id.)

## II.

## PLEADING DEFECTS

Per the Prison Litigation Reform Act at 28 U.S.C. § 1915A, the Court has screened the Complaint and identified the pleading defects listed below.

**A.  Venue and Joinder Appears to Be Improper as to the FCI Phoenix Claims.**

The Complaint names five Defendants who are staff members at FCI Phoenix. The Complaint does not allege facts demonstrating that any of the Arizona Defendants have any contacts with California that would subject them to personal jurisdiction here. See generally Goodyear Dunlop Tires Operations v. Brown, 564 U.S. 915, 923 (2011) (for a federal court to exercise personal jurisdiction over a nonresident defendant, the defendant must have at least

"minimum contacts" with the state, such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice").

Venue in this Court also appears to be improper as to the FCI Phoenix Claims.[3] The federal civil venue statute provides that an action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). For the FCI Phoenix Claims, the proper venue appears to be the U.S. District Court for the District of Arizona.

Plaintiff could voluntarily dismiss the Arizona Defendants without prejudice to suing them in a different venue by omitting them from his First Amended Complaint. If Plaintiff includes the FCI Phoenix Claims in his First Amended Complaint, he should allege facts demonstrating that either: (1) venue is proper in this district under § 1391(b), or (2) the FCI Phoenix Claims are properly joined in a single action with the FCI Victorville Claims. See Fed. R. Civ. P. 20(a)(2) (providing that defendants may be joined in a single action if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or

---

[3] Courts may sua sponte consider whether venue is proper if the defendants have not yet appeared in the action. Costlow v. Weeks, 790 F.2d 1486, 1488 (9th Cir. 1986).

occurrences; and (B) any question of law or fact common to all defendants will arise in the action."); Coughlin v. Rogers, 130 F.3d 1348, 1351 (9th Cir. 1997) ("[T]he mere fact that all Plaintiffs' claims arise under the same general law does not necessarily establish a common question of law or fact."); see also United States v. Mississippi, 380 U.S. 128, 143 (1965) ("Since joinder of the registrars in one suit was proper, the argument that venue as to some of them was not properly laid is also without merit."). Otherwise, the undersigned may recommend that the District Judge dismiss these claims or transfer them to the District of Arizona. See 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."); Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party" or "sever any claim against a party.").

**B.     Official Capacity Claims for Monetary Damages are Not Cognizable, and Clarification is Needed as to Plaintiff's Claims for Injunctive Relief.**

Plaintiff cannot pursue monetary damages under Bivens against federal defendants named in their "official" capacity. A Bivens suit against such defendants in their official capacity is merely another way of pleading an action against the United States, which would be barred by sovereign immunity. Consejo de Desarrollo Economico de Mexicali, A.C. v. United States, 482 F.3d 1157, 1173 (9th Cir. 2007). A Bivens action is not necessary, however, in suits that seek equitable relief against the federal government, because the Administrative Procedure Act waives sovereign immunity for such claims. Ministerio Roca Solida v. McKelvey, 820 F.3d 1090, 1096 (9th Cir. 2016) (citing 5 U.S.C. § 702).

Plaintiff might be able to seek prospective injunctive relief against a federal official capacity defendant or bring a mandamus action under 28 U.S.C. § 1361. As presently drafted, however, the Complaint does not distinguish which Defendants

are sued in their official capacity for injunctive relief only (if any) and those sued for monetary damages under Bivens.  The Complaint also fails to identify which Defendants are sued for which forms of equitable relief.  This should be clarified in any First Amended Complaint.

**C.     The Complaint Fails to State a Claim Based on Supervisory Liability.**

Plaintiff alleges that, through the grievance procedure, the BOP Administrator Defendants learned of his allegations that other BOP staff members had deprived him of constitutional rights but failed to grant him relief.  Such allegations are insufficient the state a Bivens claim against the BOP Administrator Defendants in their individual capacity.  Supervisory liability under Bivens attaches "if there exists either (1) [the defendant's] personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011).  Courts in this circuit generally agree that denying an inmate appeal does not, by itself, lead to liability.  See Phillipi v. Patterson, No. 13-01514, 2014 WL 11774836 at *3, 2014 U.S. Dist. LEXIS 105865 at *7 (E.D. Cal. Aug. 1, 2014) (citing George for the proposition that "denial of an inmate appeal … does not state a cognizable constitutional violation"), aff'd sub nom. Phillippi v. Patterson, 599 F. App'x 288 (9th Cir. 2015); Baldhosky v. Hubbard, No. 12-01200, 2018 WL 1392058, at *3, 2018 U.S. Dist. LEXIS 45667 at*8-9 (E.D. Cal. Mar. 20, 2018) (dismissing "claims alleging that individuals who[se] identities are apparently presently unknown reviewed his health care services requests and failed to act in violation of his constitutional rights," citing George, and noting that "denial of a prisoner's administrative requests generally does not cause or contribute to any underlying constitutional violation" unless prison administrators "willfully turn a blind eye to constitutional violations being committed by subordinates"); Thomas v. Matevousian, No. 17-1592, 2018 WL 1452261 at *4, 2018 U.S. Dist. LEXIS 46663 at*9 (E.D. Cal. Mar. 21, 2018)

("Actions in reviewing a prisoner's administrative appeal generally cannot serve as the basis for liability in a section 1983 action."); Hernandez v. Cate, 918 F. Supp. 2d 987, 1018 (C.D. Cal. 2013) (dismissing claims "based solely on [the defendants'] role in the inmate appeals process" but denying motion to dismiss claims plausibly suggesting that other defendants "were involved in authorizing or implementing the modified programs at issue").

To the extent Plaintiff attempts to plead that the BOP Administrator Defendants personally participated in the wrongs he experienced by alleging that they failed to supervise BOP staff adequately, he has not alleged facts showing that the lack of supervision caused the alleged constitutional deprivations.

**D.    The Request for Declaratory Relief May Not Present an Actual Case or Controversy.**

The Court liberally construes the Complaint as requesting a declaratory judgment under the Declaratory Judgment Act at 28 U.S.C. § 2201. Plaintiff, however, fails to allege what declaration of rights he seeks. Because of this, the Complaint fails to allege facts showing that the requested declaratory judgment would resolve an ongoing case or controversy, as opposed to a dispute rendered moot by his transfer to FCI Phoenix. See Rhoades v. Avon Prod., Inc., 504 F.3d 1151, 1157 (9th Cir. 2007) ("Absent a true case or controversy, a complaint solely for declaratory relief under 28 U.S.C. § 2201 will fail for lack of jurisdiction."); Low v. Stanton, No. 05-2211, 2009 U.S. Dist. LEXIS 6827 at *12, 2009 WL 161080 at *4 (E.D. Cal. Jan. 22, 2009) ("Generally, when a prisoner is transferred from a prison, his claim for injunctive or declaratory relief becomes moot as to conditions at that particular facility."), report & recommendation adopted, 2009 U.S. Dist. LEXIS 28469, 2009 WL 902077 (E.D. Cal. Mar. 31, 2009).

**E.    Eighth Amendment Failure to Protect Claim.**

It is unclear which Defendants (if any) knew of the danger posed by the inmate who assaulted Plaintiff in the SHU. Additionally, Plaintiff's vague

allegations about the inmate's "institutional history" do not sufficiently show that anyone knowledgeable about that history would have realized that the inmate posed a serious risk of harm to Plaintiff. See Farmer v. Brennan, 511 U.S. 825, 837 (1994) (holding that a prison official violates the Eighth Amendment by failing to protect an inmate only if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

**F.     The Complaint Fails to State a Claim for First Amendment Retaliation under Abbasi.**

In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 66 (2001). In Ziglar v. Abbasi, __ U.S. __, 137 S. Ct. 1843, 1849 (2017), the Supreme Court established a two-step test for determining when a Bivens remedy (i.e., monetary damages) exists, which requires analyzing: (1) whether the claim arises in a new context; and (2) whether special factors counsel against implying a damages remedy.

The Supreme Court has "never held that Bivens extends to First Amendment claims," such as the retaliation claims alleged by Plaintiff. Reichle v. Howards, 566 U.S. 658, 663 n.4 (2012) (characterizing Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) as "assuming without deciding that a First Amendment free exercise claim is actionable under Bivens" and Bush v. Lucas, 462 U.S. 367, 368 (1983) as "refusing to extend Bivens to a First Amendment speech claim involving federal employment"). In a recent unpublished decision, the Ninth Circuit declined to recognize a Bivens remedy where a federal inmate alleged that prison staff retaliated against him by subjecting him to unmerited punishment after he filed

grievances.  Buenrostro v. Fajardo, No. 18-15488, __ F. App'x __, 2019 U.S. App. LEXIS 15158, 2019 WL 2207662 (9th Cir. May 22, 2019), rehearing denied at 2019 U.S. App. LEXIS 18271 (9th Cir. Cal., June 18, 2019).  The Ninth Circuit reasoned that "special factors counsel against extending Bivens" to First Amendment retaliation claims by inmates, because "Congress has addressed the question of prisoners' remedies in the Prison Litigation Reform Act of 1995" and "an alternative remedial structure exists, including through the Bureau of Prisons administrative grievance process."  Id. at *3.  The Ninth Circuit found these alternative remedies adequate to foreclose an implied Bivens remedy, notwithstanding the prisoner's allegations that he was punished for using them.

The trend in California district court decisions is to find that special factors weigh against implying a Bivens remedy for First Amendment retaliation claims. See Daniels v. Fed. Bureau of Prisons, No. 19-719-FMO (PLA), 2019 U.S. Dist. LEXIS 74635, at *13, 2019 WL 1959255, at *5 (C.D. Cal. May 2, 2019) (declining to extend Bivens because inmate had "an adequate remedy in the BOP's administrative grievance process, a federal tort claims action, and the availability of injunctive relief"); Hoffman v. Preston, No. 16-1617, 2019 U.S. Dist. LEXIS 70251, at *18, 2019 WL 1865459, at *7 (E.D. Cal. Apr. 24, 2019) (declining to extend Bivens citing "the complexities of prison administration and interaction between the executive and legislative branches in that area" and "the wide-ranging impact on government operations that can develop from court-created remedies"); Sutter v. United States, No. 17-07245-SVW (DFM), 2019 U.S. Dist. LEXIS 71548, at *16, 2019 WL 1841905, at *6 (C.D. Cal. Mar. 12, 2019) (declining to extend Bivens citing alternative remedies and fact that decisions about placing inmates "in more restrictive detention involves real-time and often difficult judgment calls about disciplining inmates, maintaining order, and promoting prison officials' safety and security"; quoting Bistrian v. Levi, 912 F.3d 79, 82 (3d Cir. 2018)); Free v. Peikar, No. 17-159, 2018 U.S. Dist. LEXIS 54888, at *3, 2018 WL 1569030, at

*2 (E.D. Cal. Mar. 30, 2018) ("Nationwide, district courts seem to be in agreement that, post-Abbasi, prisoners have no right to bring a Bivens action for violation of the First Amendment.").

Thus, Plaintiff may not seek monetary damages for First Amendment retaliation claims under Bivens.

### G. The Grievance-Related Due Process Claims Fail under Abbasi and Because Mishandling Grievances is Not a Constitutional Violation.

Plaintiff alleges that some Defendants refused to give him grievance forms, process his grievances, or respond to his grievances. He also alleges that some Defendants rejected his grievances for "specious" reasons or failed to supervise other BOP staff responsible for handling his grievances.

To the extent Plaintiff alleges that Defendants took these actions to retaliate against him, then his allegations do not support a Bivens remedy for the reasons discussed above in connection with his First Amendment retaliation claims.

To the extent Plaintiff alleges that these actions violated his due process rights, then his claim fails regardless of Abbasi, because the prison grievance systems confers no liberty interest on inmates that requires the procedural protections of due process. See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) ("[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure."); Hollis v. York, No. 09-00463, 2009 U.S. Dist. LEXIS 97639, at *26-27, 2009 WL 3255375, at *9 (E.D. Cal. Oct. 8, 2009) ("[P]rison officials do not violate the Due Process Clause by ignoring grievances or by failing to provide prisoners with grievance forms.").

### H. The Racial Segregation Due Process Claim Fails under Abbasi as to Damages and Due to Mootness as to Injunctive Relief.

"[R]acial segregation, which is unconstitutional outside prisons, is unconstitutional within prisons, save for 'the necessities of prison security and discipline.'" Cruz v. Beto, 405 U.S. 319, 321 (1972) (citing Lee v. Washington,

390 U.S. 333, 334 (1967)).  That said, the Court is unaware of any decisions extending a Bivens remedy against individual BOP staff who allegedly made cell assignments to perpetuate racial segregation.  Cf. Turner v. Doe, No. 15-5942, 2018 U.S. Dist. LEXIS 83707 at *15, 2018 WL 2278096, at *6 (D.N.J. May 18, 2018) ("[I]n light of Ziglar ..., this Court finds that it should be left to the legislative and executive branches to determine whether an action for damages for a claim of racial discrimination exists in the prison-workplace environment"), aff'd sub nom. Turner v. Scott, No. 19-1030, 2019 U.S. App. LEXIS 20446, 2019 WL 3010286 (3d Cir. July 10, 2019); Bierwiler v. Goodwin, No. 16-00009, 2018 U.S. Dist. LEXIS 124649 at *6, 2018 WL 3559134 at *3 (D. Mont. May 22, 2018) ("The Fifth Amendment has never been the subject of a Bivens claim related to racial discrimination."), report and recommendation adopted, 2018 U.S. Dist. LEXIS 123759, 2018 WL 3549828 (D. Mont. July 24, 2018).  Thus, any claim appears to fail under Abbasi, although Plaintiff may be able to plead facts distinguishing his case.

To the extent Plaintiff seeks injunctive relief based on this violation, any such request would appear to be moot, because the Complaint admits that Plaintiff is no longer housed at FCI Victorville II where the alleged racial segregation occurred.  See Low, 2009 U.S. Dist. LEXIS 6827 at *12, 2009 WL 161080 at *4 ("Generally, when a prisoner is transferred from a prison, his claim for injunctive or declaratory relief becomes moot as to conditions at that particular facility.").

### III.
### LEAVE TO AMEND

Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se.  Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995).

IT IS THEREFORE ORDERED that the Complaint (Dkt. 1) is DISMISSED WITH LEAVE TO AMEND.  Plaintiff has until **September 2, 2019** to file a First

Amended Complaint that corrects, if Plaintiff can, the pleading defects identified in this Order.

The First Amended Complaint should bear the docket number assigned to this case (5:19-cv-05759-AB-KES), be labeled "First Amended Complaint," and be complete in and of itself without needing to refer to the original Complaint or any other documents (except any documents that Plaintiff may choose to attach to the First Amended Complaint as exhibits).

DATED: August 02, 2019

*/s/ Karen E. Scott*
_____
KAREN E. SCOTT
United States Magistrate Judge